UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATAN SOCORRO-PROSPERO,

                Plaintiff,

-against-

M. BOOTH AND ASSOCIATES, BRIAN WHEELER, JENN MCTIGUE, ALEXANDRA MACKEY, ADRIANA BEVILACQUA, NEXT FIFTEEN COMMUNICATIONS CORPORATION, and DOES 1-X,

                Defendants.

23-cv-11319 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

    Plaintiff Jonatan Socorro-Prospero was an M. Booth video producer until he was fired in 2022. He sues M. Booth, its corporate parent Next 15, and several M. Booth employees for violating Title VII, the ADA, 42 U.S.C. § 1981, the FMLA, the NYSHRL, and the NYCHRL. He says that defendants subjected him to a hostile work environment based on his sexual orientation, race, and ethnicity; failed to engage in an interactive process to accommodate his disability; and retaliated against him for complaining about harassment, requesting accommodations, and taking FMLA leave. For the following reasons, defendants' motion for summary judgment is GRANTED as to the federal claims, and the Court declines to exercise supplemental jurisdiction as to the state- and city-law claims.

## BACKGROUND[1]

    M. Booth is a PR and communications agency with an office in New York. Dkt. 48 ¶¶ 1–2. The company hired Socorro-Prospero as a video producer in 2019 to work in the video-production (VP) team. *Id.* ¶ 2. Socorro-Prospero's job was to handle video and photo shoots, and to edit videos and stills for client approval. *Id.* ¶¶ 7–8; Dkt. 54-5 ¶ 3. According to defendants, Socorro-Prospero spent 60% of his time on video and photo shoots, and 40% on editing work. Dkt. 48 ¶ 7. One of

---

[1] Socorro-Prospero states that "[e]xcept to the extent noted intermittently [in his brief], [Socorro-Prospero] has no serious quarrel with Defendants' introductory context-setting descriptions." Dkt. 54 at 5. In general, the Court observes that Socorro-Prospero's brief is a rendition of various legal principles interspersed with occasional and infrequent references to the evidence in this case. Where the evidence is addressed, it is discussed in general terms with very few citations to the record.

Socorro-Prospero's co-workers on the VP team, and the main culprit in this case, was senior video producer Gabriel Guzman. Dkt. 48 ¶ 6; Dkt. 54-5 ¶ 6.

Socorro-Prospero claims that Guzman harassed him for years, including name-calling and other degrading acts. *See, e.g.*, Dkt. 54-5 ¶¶ 16–32. Socorro-Prospero says that he complained to his supervisor, Brian Wheeler, about this "multiple times" and that Wheeler failed to take action. *Id.* ¶¶ 33–36. Socorro-Prospero reported Guzman's conduct to HR in 2021. Dkt. 48 ¶ 13.

According to Socorro-Prospero, on May 7, 2021, he spoke to the vice president of diversity, equity, and inclusion at M. Booth, Eric Winkfield, and recounted to Winkfield the names he had been called, including that Guzman had called him a "faggot." Dkt. 47-12 at 3. Winkfield notified the company's vice president of human resources, Emily Michael, and she spoke to Socorro-Prospero on May 12, 2021. Dkt. 47-3 at 208:21–209:17; Dkt. 48 ¶ 19. Following this conversation, the company separated Socorro-Prospero and Guzman from working together, reassigned Socorro-Prospero to a different supervisor (moving him from Wheeler to senior vice president Michele Mason), and commenced an investigation. Dkt. 48 ¶¶ 20–22; Dkt. 54-5 ¶ 121 ("To the Company's credit, Ms. Bevilacqua approved my request to remove Brian from my supervisory line, effective immediately, and reassigned me to a new supervisor, Michele Mason.").

Socorro-Prospero complained about the investigation, so the company engaged an independent third-party investigator, Michael Clarkson, to look into the situation. Dkt. 48 ¶ 33. As a result of this investigation, Clarkson recommended that Guzman be terminated, and he was on July 6, 2021. Dkt. 47-15 at 77:22–25; Dkt. 48 ¶ 40. This news was well received by Socorro-Prospero. Dkt. 54-5 ¶ 128 ("This came as a great relief to me . . . ."). After Guzman's termination, the VP team consisted of Wheeler and Socorro-Prospero, but Socorro-Prospero reported to Mason. Dkt. 47-6 ¶ 23; Dkt. 47-3 at 230:16–19.

On June 24, 2021, while Clarkson's investigation was ongoing, Socorro-Prospero requested FMLA leave based on his psychological distress. Dkt. 48 ¶ 42; Dkt. 54-5 ¶ 125–26. That leave was approved, and senior vice president of HR, Alexandra Mackey, further asked Socorro-Prospero whether there were any accommodations that could help him return to work. Dkt. 47-3 at 100:11–14; Dkt. 48 ¶ 44. (Socorro-Prospero says that the first outreach from Mackey was on July 26, 2021. Dkt. 54-5 ¶ 133.) Socorro-Prospero went on leave effective July 27, 2021. Dkt. 48 ¶ 45. On October 18, 2021, he returned from leave; Mackey informed Socorro-Prospero that he could work remotely but that there may be times when he would need to do shoots in the office. Dkt. 48 ¶¶ 50–51.

On November 12, 2021, in response to Mackey's earlier request (from either June or July) for proposed accommodations, Socorro-Prospero sent three requests: (1) that he be reassigned to another facility; (2) not be required to report to Wheeler; and (3) continue to work remotely to the extent feasible. Dkt. 48 ¶¶ 53, 55, 58, 61. Three days later, Mackey responded that Socorro-Prospero didn't report to Wheeler and hadn't since May 2021, and that he already could work remotely when feasible. Dkt. 47-23 at 2. Mackey also advised Socorro-Prospero that there were no equivalent open positions at any facility in the New York area at that time. *Id.* Mackey advised

Socorro-Prospero that she would continue to check in with him and that he should contact her with any other issues, concerns, or requests. Dkt. *Id.* Socorro-Prospero didn't respond.

In March 2022, Mason (Socorro-Prospero's supervisor) informed him of two shoots that he would need to do in the office. Dkt. 47-3 at 268:5–18; Dkt. 47-24 at 4–5. Socorro-Prospero declined, and instead requested that he be permitted to do them remotely or at the company's Flatiron location and that the shoots be conducted so that he would not be required to "interact directly" with Wheeler or Art Director Pitu Sanchez. Dkt. 47-24 at 4–5; Dkt. 47-5 at 2. On March 11, 2022, Mackey advised Socorro-Prospero that the shoots could not be done remotely because he had to be physically present to take the photos. She also informed him that the company no longer had a Flatiron office (it closed in 2021). *Id.* at 3–4. She further advised him that taking "photographs of [the] entire team" remotely would incur a "significant cost," and, "more importantly," cause a "massive disruption" to productivity. *Id.*

Finally, Mackey reiterated that it was not possible to completely isolate Socorro-Prospero from Wheeler and Sanchez, but Wheeler had been removed as his supervisor the prior year. As a temporary solution, Mackey advised Socorro-Prospero that M. Booth had been hiring freelancers for the assignments that Socorro-Prospero wasn't taking but that it could not "continue to pay freelance photographers for projects that [Socorro-Prospero] refuse[d] to do" at the office. *Id.* at 4. Mackey reiterated that M. Booth would be open to other accommodations, and she offered to speak with Socorro-Prospero. *Id.*

Socorro-Prospero took Mackey up on the offer and spoke with her on March 14, 2022, after which she emailed him that they "need[ed] to finalize [their] discussion about trying to accommodate [him] no later than" March 16, 2022. *Id.* at 2–3. Mackey explained that the company "already had to hire a freelancer to take the headshots today and that cannot continue." *Id.* at 3. Socorro-Prospero responded that he was "intending on replying . . . regarding accommodations by" March 18, 2025. *Id.* at 2. He messaged Mackey on March 18, 2022, stating that he needed an extension until March 21, 2022. Dkt. 47-25 at 2.

Socorro-Prospero doesn't dispute that he failed to respond to Mackey with further proposals for accommodations on the schedule he had indicated. He also didn't tell M. Booth that he needed more time. Dkt. 54-5 ¶¶ 149–58. On March 28, 2022, Socorro-Prospero was terminated. Dkt. 48 ¶ 86.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden

3

of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

### I. Socorro-Prospero Has Forfeited His Section 1981, FMLA, and ADA Claims Other Than Those Concerning His Termination

Socorro-Prospero's complaint advances federal claims under Title VII, the ADA, 42 U.S.C. § 1981, and the FMLA. Socorro-Prospero's opposition brief fails to address § 1981, the FMLA, or his interactive-process disability claims. Even when given the opportunity to submit a sur-reply brief, after defendants argued that Socorro-Prospero abandoned his claims, he failed to address them. These claims are plainly forfeited. *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) ("Since this issue is adverted to only in a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived, or, more precisely, *forfeited*.") (cleaned up).

### II. Socorro-Prospero's Title VII Claim is Untimely

"Plaintiffs asserting claims under Title VII . . . must first file a complaint with the Equal Opportunity Employment Commission (EEOC) . . . within 300 days of the allegedly discriminatory action." *Gindi v. N.Y. City Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (citations omitted); *see also* 42 U.S.C. § 2000e-5(e)(1). Socorro-Prospero filed his charge on April 29, 2022, Dkt. 1 at 3, which means that allegations occurring more than 300 days before that date (*i.e.*, July 3, 2021) are time-barred. *See Gindi*, 786 F. App'x at 282. Here, Socorro-Prospero alleged that Guzman's remarks subjected him to a hostile work environment, but the last time Guzman engaged in any harassing conduct, according to Socorro-Prospero, was in May 2021, and Socorro-Prospero and Guzman were separated from each other that same month. Socorro-Prospero admits that he never interacted with Guzman after this date. Indeed, Guzman was fired on July 5, 2021, and Socorro-Prospero was notified about his termination a week later.

Socorro-Prospero doesn't disagree with these facts or the general statement of the law. But he says that his claim is nevertheless timely under *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) and *Pesce v. Mendes & Mount, LLP*, 2020 WL 7028641 (S.D.N.Y. Nov. 30, 2020). He argues that even though Guzman didn't do anything to him after May 2021, he nevertheless "suffered ongoing fear of workplace interaction with his alleged harasser (Guzman), and Defendants failed to take timely remedial action to eliminate this fear." Dkt. 54 at 7. Specifically, they "did not remove Guzman from the workplace until early July and failed to inform [Socorro-Prospero] of this removal for another week," and this "prolonged [his] fear of encountering Guzman upon his return to work." *Id.* at 7–8.

*Cornwall* and *Pesce* stand for the principle that in the case of a continuing violation extending into the limitations period, a claim based on earlier events that were part of that violation is timely. *See Pesce*, 2020 WL 7028641, at *3 (citing *Cornwell*, 23 F.3d at 704). So Socorro-Prospero's claim of timeliness really focuses on whether, if there was a hostile work environment at M. Booth, it extended into the limitations period. Here, the undisputed evidence is that there was no abusive

conduct that occurred within the limitations period: Guzman and Socorro-Prospero didn't work together after May 2021, Socorro-Prospero was switched to another manager, and the company commenced a full investigation. Socorro-Prospero doesn't cite to any admissible evidence of fear or harm arising from the hostile work environment during the limitations period. To be fair, Socorro-Prospero may have been rattled by Guzman's conduct, Wheeler's ambivalence about it, and the company's investigation; but Socorro-Prospero points to no incident after May 2021 where there was any harassment or even a threat of harassment that went unaddressed.

That's different from cases like *Pesce*. In that case, the plaintiff, who worked for a law firm, feared sexual harassment from one of the firm's clients, Hicks, and the company knew it. *Id.* at *1–2. In fact, the company set up a security protocol to stop it. *Id.* at *2. But during the limitations period, the harasser was allowed to come into the office unaccompanied with no prior notice to the plaintiff, in violation of the protocol. *Id.* The plaintiff was unable to contact anyone to stop things, and she suffered a panic attack, called the police, and was ordered by HR to go home. *Id.* In response to all of this, the company reprimanded the plaintiff and docked her "personal benefit" days. *Id.* If there was a hostile environment in the office, it continued into the limitations period. *Id.* at *4 ("Notwithstanding the threat that Hicks posed to Pesce from 1989 onward, the Firm Defendants continued to host him in their offices on a regular basis. The Firm Defendants failed to give Pesce advance notice of Hicks's visits and allowed Hicks to spend time in the office unmonitored. The Firm Defendants' multi-year failure to ensure that Pesce could work at Mendes without fearing sexual harassment and assault may constitute a continuing violation of Title VII."). Though Socorro-Prospero argues that his anxiety continued into the limitations period, he doesn't point to an incident of workplace misconduct that occurred during that period. A delay in telling Socorro-Prospero that the causes of his hostile work environment had been addressed is not itself abusive conduct constitutive of a hostile work environment.

Socorro-Prospero's other cited authorities don't lend further support to his argument. For instance, in *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001), the court applied the continuing-violation doctrine where there were assertions of "escalating harassment every day," including into the limitations period. *Id.* at 364. In that context, the court concluded that "the continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Id.* at 362. Here, M. Booth investigated and took action to remedy the issue before the limitations period began, and Socorro-Prospero doesn't point to any abuse after that happened.

### III. There is No Individual Liability Under Title VII, and the Corporate Defendants Cannot Be Held Liable for Guzman's Conduct

Even if Socorro-Prospero's Title VII claim was timely, summary judgment would nevertheless be warranted. As to the individual defendants, none of whom was Socorro-Prospero's employer, Title VII does not provide for individual liability. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). As to the corporate defendants, "[w]here the harassment was done by a co-employee

5

without supervisory authority over the plaintiff, liability will be imputed to the employer only if it is negligent, that is, if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *McBride v. C&C Apartment Mgmt. LLC*, 2024 WL 4403701, at *11 (S.D.N.Y. Oct. 1, 2024) (quoting *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001)). "But when the harassment is done by a supervisor, it is imputed to the employer." *Id.* Socorro-Prospero doesn't claim that anyone other than Guzman harassed him.

The first question is whether Guzman was Socorro-Prospero's supervisor. An employee is a "supervisor" if he has authority "to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). While Socorro-Prospero may have believed that Guzman had authority over him, *see, e.g.*, Dkt. 54-5 ¶ 12, there is no evidence in the record that this was the case, or that Guzman met the definition of Socorro-Prospero's supervisor. And even if Guzman could be classified as a low-level supervisor, the Second Circuit has held that "where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, the situation will generally be indistinguishable from cases in which the harassment is perpetrated by the plaintiff's co-workers." *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994). There's no evidence that Guzman used any supervisory authority he may have had to carry out the harassment; instead, the harassment came in the form of abusive texts, emails, and other co-worker to co-worker interactions.

In response, Socorro-Prospero launches into a law-review style discussion of the supervisory cases, untethered to the facts of this case, ultimately reaching the conclusion that "a straightforward application of the test here would entail the court examining whether any of the decisions Guzman actually made with respect to [Socorro-Prospero] had any adverse consequences for him." Dkt. 54 at 13. But in the same paragraph, Socorro Prospero admits that "no information exchanged in discovery in this matter revealed that this was the case here." *Id.* at 13–14. It's unclear what Socorro-Prospero wants the Court to do with this.

Socorro-Prospero offers that his reasonable belief—even if mistaken—that Guzman was his supervisor is enough. *Id.* at 14. That is contrary to Second Circuit law. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d Cir. 2019) (foreclosing liability despite wrongdoer threatening plaintiff with adverse actions where "there is no record evidence that [the employer], in fact, ever empowered [him] to take such actions"); *see also id.* ("The extent of a worker's authority is determined . . . by an examination of actual authority." (citing *Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 271 (1st Cir. 2014))). Socorro-Prospero also seems to suggest that additional discovery might shore up some of the deficiencies in the record, Dkt. 54 at 14, but there's no justification for reopening the record just because Socorro-Prospero failed to adduce enough evidence with the time he was given.

Given this, the question is whether M. Booth and Next 15 can nevertheless be held liable for turning the other cheek to Guzman's discrimination. They can't because they didn't. They

6

provided an avenue for complaints, which Socorro-Prospero was aware of, *see* Dkt. 54-5 ¶ 46, and when Socorro-Prospero escalated his concerns to HR, he was separated from Guzman and the harassment ceased; after a more comprehensive investigation, Guzman was fired. This all happened within a matter of months. Nothing in the evidentiary record gives rise to a triable issue of material fact was to whether M. Booth and Next 15 "provided no reasonable avenue for complaint or knew about the harassment but did nothing about it."[2] *Murray v. N.Y.U. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).

### IV.    Socorro-Prospero's Disability Claims Relating to His Termination Fail

Just as with Title VII, there is no individual liability under the ADA. *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir. 2024). As to the corporate defendants, Socorro-Prospero's discrimination and retaliation claims both require evidence that his termination was caused by his disability or his requests for accommodations. *See Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015). They also require that Socorro-Prospero establish that defendants' stated reason for his termination—the refusal to perform an essential function of his job, in-person photo shoots—was pretextual. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).

The evidentiary record here is clear that defendants' decision to terminate Socorro-Prospero wasn't based on discrimination or retaliation. As Socorro-Prospero himself observes in his declaration, M. Booth, through Alexandra Mackey, repeatedly engaged him in a discussion to determine what reasonable accommodations would be necessary, and there were several steps that they had already taken, including permitting Socorro-Prospero to work from home except when necessary for in-person shoots. After some back and forth, Socorro-Prospero failed to respond with further proposals by the date he himself had indicated, and did not communicate with the company to suggest an alternative, leaving defendants in a lurch. It was only a week after Socorro-Prospero had dropped the ball that he was terminated.

As defendants put it, "[s]ince his return from FMLA in October 2021, despite being paid his full salary, Plaintiff had performed little to no work because he refused to attend shoots at M. Booth's office, and there was little to no editing to do as a result. Thus, on March 28, 2022, the Company terminated Plaintiff's employment due to his failure to perform the essential functions

---

[2] For these same reasons, M. Booth and Next 15 could claim recourse to the so-called *Faragher/Ellerth* affirmative defense. "The defense comprises two elements: that (1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' The employer may raise the defense, however, only if one of two further elements is met: either (1) the employee's supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)). The elements of the defense are soundly established on this record, and neither of the exceptions applies.

of his job and because Plaintiff failed to continue engaging with the Company in finding potential alternative accommodations." Dkt. 49 at 11. On this record, even viewing the evidence in the light most favorable to Socorro-Prospero, there is no genuine issue of material fact as to either causation or the pretextual nature of the stated reasons for termination. *Woolf v. Bloomberg L.P.*, 2019 WL 1046656, at *17 (S.D.N.Y. Mar. 5, 2019) (summary judgment where plaintiff "does not offer direct evidence of retaliatory animus, such as remarks that could be construed as indicating a retaliatory intent, or relevant circumstantial evidence, such as treatment that differed from similarly situated colleagues with a similar work history").

### V.     The Court Declines to Exercise Jurisdiction Over the Remaining Non-Federal Claims

With the federal-law claims disposed of, only state-law issues remain. The question is whether the Court should exercise pendent jurisdiction over those claims. As a general matter, "federal courts should avoid needless decisions of state law, both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Valentine v. HNTB Corp.*, 2023 WL 2752121, at *8 (S.D.N.Y. Mar. 31, 2023) (cleaned up) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). In this exact context, "a federal court need not undertake such a review of a NYCHRL claim if, after disposition of the parallel federal claim, it declines to exercise pendent jurisdiction." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015). And courts typically don't undertake that review. That's true not only early in the litigation, after a motion to dismiss, but also later after a motion for summary judgment. *See, e.g.*, *Valentine*, 2023 WL 2752121, at *9 (after summary judgment on Title VII claim); *Mendez-Nouel v. Gucci Am., Inc.*, 2012 WL 5451189, at *1 (S.D.N.Y. Nov. 8, 2012) (same); *Belton v. City of New York*, 2014 WL 4798919, at *9 (S.D.N.Y. Sept. 26, 2014) (same); *Keaton v. Unique People Servs., Inc.*, 2018 WL 3708658, at *6 (S.D.N.Y. Aug. 3, 2018) (same).

Like those cases, this case is a poor vehicle for pendent jurisdiction. The relevant factors are "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998). Here, "the standard of . . . liability is materially different under the [NYCHRL] from that under Title VII … [and] [t]he Court has not invested the judicial resources necessary to resolve those claims." *Mendez-Nouel*, 2012 WL 5451189, at *17; *see also Livingston v. City of New York*, 563 F. Supp. 201, 232 n.14 (S.D.N.Y. 2021) (observing that after a set of amendments in 2019 "the standard for claims [under the NYSHRL] is closer to the standard of the NYCHRL").  Neither have the parties, who spend most of their time focused on the disposition of the federal claims (judicial economy and comity). On top of that, Socorro-Prospero claims to have mispleaded some of the state and city law claims because of a "scrivener's error." Dkt. 54 at 22. If this case proceeds in federal court he's asked to be able to amend his complaint, kickstarting new issues in this suit (judicial economy and fairness).[3] But he doesn't appear to have any qualms

---

[3] Socorro-Prospero appears to change his mind in his sur-reply about whether he indeed mispleaded anything. Dkt. 66 ¶ 1. But that's just indicative of the issues that will arise if this suit continues on with the state- and city- law claims.

with going to state court instead, which potentially could let him re-plead his case. Finally, because the factual questions will likely be similar, the parties can use the discovery they've already gotten here to expedite that case (convenience). *See Mendez-Nouel*, 2012 WL 5451189, at *17.

In short, this is the usual case in which the federal claims are eliminated before trial. And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. So the Court declines jurisdiction here.

## CONCLUSION

For these reasons, defendants' motion for summary judgment is granted as to all federal claims. Because the Court declines to exercise supplemental jurisdiction over Socorro-Prospero's state- and city-law claims, they are dismissed without prejudice. The Clerk of Court is directed to terminate Dkt. 46 and close this case.

SO ORDERED.

Dated: September 22, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge
